

**Littler Mendelson, P.C.**
900 Third Avenue
New York, NY 10022.3298

James F. Horton
212.583.2688 direct
212.583.9600 main
jfhorton@littler.com

December 12, 2022

**VIA ECF**

Honorable Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re:** *Elizabeth Berry v. Mediacom Communications Corp.*,
Case No. 22-CV-5183 (MKV)
**Amended Letter Motion for Approval of Settlement**

Dear Judge Vyskocil:

We submit this Amended Letter Motion to address the issues raised by the Court in its November 15, 2022 Order (ECF 23). This firm represents Defendant in the above referenced action. We write, jointly with counsel for Plaintiff, to request approval of the Settlement Agreement in the above Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The fully executed Settlement and Release Agreement ("Agreement") is attached to the original Letter Motion (ECF 22).

**Background and Claims**

On June 23, 2022, Plaintiff's counsel filed the Complaint alleging that Defendant failed to properly pay the Plaintiff the required minimum wage and overtime wages in violation of the FLSA and WPCL.

Mediacom Communications Corporation is the United States' fifth largest cable television provider based on the number of video subscribers, and among the leading cable operators focused on serving smaller cities and towns. The Company has a significant concentration of customers in the Midwest and Southeast and is the largest broadband provider in Iowa. Mediacom is headquartered in New York and incorporated in Delaware. Plaintiff was hired by Mediacom as a Customer Service Representative. It is Mediacom's position that it provided all employees, including Plaintiff, with the correct minimum wage and overtime wages. It is Plaintiff's position that she was required to work a substantial amount of time off-the-clock as part of her job duties, and she was not compensated for that work.

On or about September 30, 2022, the Parties mutually agreed to resolve this matter via settlement in an amicable manner without the expense and time of further litigation and without admission of liability or wrongdoing by anyone.

The Parties' Settlement Agreement (ECF 22) provides for a total settlement of $7,500.00. The Plaintiff will receive the following:

| | |
|---|---|
| Elizabeth Berry | $2,000.00 |

Plaintiff's counsel, Johnson Becker PLLC will receive $5,500.00 for legal fees and costs.

**<u>Standard for Review</u>**

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the Plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky, supra* at 335.

**<u>The Settlement Reached Between the Parties</u>**

During early discovery, Defendant provided Plaintiff with payroll information reflecting Plaintiff's hours worked and pay stubs reflecting wages paid. Plaintiff identified what she believed to be violations of the FLSA and WPCL, including minimum wage and overtime wage violations. Defendant vehemently denies that there are violations of the FLSA or the WPCL present with regard

to these issues, and the Parties have a *bona fide* dispute as to the facts and law underpinning these claims.

Plaintiff alleges that up to ten (10) minutes a day were uncompensated. As described above, the Parties disagree on this contention.

Defendant further shared that it maintains a timekeeping rounding policy. Defendant rounds the time entries of CSRs like Plaintiff to the nearest quarter hour. For example, on June 26, 2019, Plaintiff clocked in at 9:07 a.m., took a one-hour break from 12:15 p.m. to 1:15 p.m., and clocked out for the day at 4:58 p.m. Based on the time entries alone, Plaintiff worked a total of 6 hours and 51 minutes that day, but Defendant actually paid Plaintiff for a full 7 hours. Defendant rounded Plaintiff's first-time entry of the day down 7 minutes to 9:00 a.m. and her final time entry of the day up 2 minutes to 5:00 p.m. Defendant therefore paid Plaintiff for an extra 9 minutes that day, 1 minute shy of the 10 minutes of work Plaintiff allegedly performed before she clocked in.

If Defendant successfully refutes Plaintiff's claims that she spent 10 minutes per day performing compensable work before clocking in, then Plaintiff risks her claim being swallowed by Defendant's rounding policy. Plaintiff consistently clocked in a few minutes after her scheduled shift start time and consistently clocked out a couple minutes before her shift ended. Plaintiff must therefore show that the amount of time she spent performing unpaid work is greater than the amount of time Defendant paid her under its rounding policy.

To prevail on her claim, Plaintiff must also prove that Defendant's failure to pay her for all her time worked was willful. The FLSA has a two-year statute of limitations that may be extended to three years if an employer's violations were willful. *See* 29 U.S.C. § 255. Plaintiff filed her Complaint in June 2022 but stopped working for Defendant over two-and-a-half years earlier in September 2019. Additionally, Plaintiff bears the burden to prove willfulness. *See Trimmer v. Barnes & Noble, Inc.*, 31 F. Supp. 3d 618, 627 (S.D.N.Y. 2014). Plaintiff therefore possesses great risk in not recovering any unpaid wages whatsoever if she cannot show that Defendant acted willfully and Defendant later prevails on statute of limitations grounds.

Considering the significant factual and legal disputes, the Parties believe that the $7,500.00 settlement amount is a fair compromise to resolve this case without further litigation, and without subjecting both Parties to the time and expense of more extensive discovery and ongoing litigation. While all sides are confident that they would prevail on the disputed issues of law and fact, there are bona fide disputes as to these issues.

The settlement agreement reflects a reasonable compromise of the disputed issues and any actual or potential claims in the totality of the circumstances. In addition, the Parties believe that the certainty of settlement is better than the uncertain outcome of protracted litigation. Lastly, each Party is represented by counsel experienced in wage and hour practice.

**Plaintiff's Ranges of Possible Recovery**

As stated above, the proposed settlement represents a fair value of Plaintiff's alleged claims, including liquidated damages and statutory damages, where Defendant denies all violations. *See, Rodriguez-Hernandez v. K Bread & Co.*, No. 15- cv-6848 (KBF), 2017 U.S. Dist. LEXIS 78034, at *10 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks). The settlement will also enable the Parties to avoid the burdens of testifying, and the hardship of waiting for the payment of any recovery. The Plaintiff believes that, on balance, the recovery they obtain now is preferable to waiting for the conclusion of anticipated lengthy litigation.

Part of the purpose of settlement is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the [Plaintiffs] . . . against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). The settlement represents a reasonable compromise of the bona fide disputes in this matter. A "presumption of fairness, adequacy and reasonableness may attach to a . . . settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted).

The Parties participated in arm's length settlement discussions in order to arrive at this settlement. As such, the settlement involves a clear and bona fide wage dispute in contested litigation, which was resolved through an arm's-length settlement process.

Defendant produced Plaintiff's timesheets and pay records for the purpose of Plaintiff making a demand. Under the three-year statute of limitations, Plaintiff can potentially recover for unpaid work from the end of June 2019 to when she left her employment in September 2019. At 10 minutes per day of unpaid work, Plaintiff calculates her total potential recovery as $458.63. This assumes that Plaintiff proves she performed 10 minutes of unpaid work per shift, is entitled to straight time under Iowa's WPCL, and is entitled to liquidated damages under both the WPCL and FLSA. It further assumes that Defendant acted willfully, otherwise Plaintiff is entitled to nothing.

Considering Plaintiff's risks on the merits and her range of potential recovery, Plaintiff's Counsel negotiated her an excellent settlement of over four times what she would be potentially owed.

**Possibility of Fraud or Collusion**

This settlement was reached after intensive negotiations between experienced counsel who duly counseled their respective clients on the benefits and risks of continued litigation. Moreover, Defendant provided significant time record and pay stub documentation to Plaintiff. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007

WL 2230177, at *4 (S.D.N.Y July 27, 2007). There was no fraud or collusion in the present matter and the Court should approve the settlement.

**Plaintiffs' Counsel is Entitled to a Reasonable Fee**

Counsel is entitled to reasonable attorneys' fees to compensate for work in recovering the unpaid wages and statutory violations under the FLSA and WPCL. The Parties refer the Court to the Declaration of Zackary S. Kaylor, attached as Exhibit B to the original Letter Motion (ECF 22). Mr. Kaylor submits a second declaration, attached hereto as Exhibit A, with this Amended Letter Motion providing a copy of the Retainer Agreement and his firm's billing records. Plaintiff's Retainer Agreement with her counsel contemplates her counsel receiving the greater of 40% of the total recovery or a reasonable fee awarded by the Court. Plaintiff's Counsel therefore moves for approval of a reasonable fee as negotiated by the parties—an amount still lower than Plaintiff's Counsel's actual lodestar.

The FLSA's fee-shifting provision requires employers, including those that settle cases, to pay the employee's reasonable attorneys' fees and costs in having to bring a lawsuit to recover her unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action.") (emphasis added). The reason for requiring the employer to pay the employee's legal fees is simple. "Under the FLSA, 'Congress intended that the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'" *Sinyard v. C.I.R.*, 268 F.3d 756, 761 (9th Cir. 2001) (quoting *Maddrix v. Dize*, 153 F.2d 274 (4th Cir. 1946)). Indeed, "allowing an award of attorney's fees under FLSA cases ... encourage[s] employees to vindicate what Congress considers an important right to receive wages designed to ensure a minimum standard of living." *Fisher v. Stolaruk Corp.*, 648 F. Supp. 486, 487 (E.D. Mich. 1986) (further explaining that "the plaintiff acts as a private attorney general").

The fees awarded to an employee's counsel are not weighed against an employee's recovery and the Second Circuit has held such a proportionality rule to be "inconsistent with the remedial goals of the FLSA." *Fisher v. SD Protection, Inc.*, 948 F.3d 593, 603 (2d Cir. 2020). "By implementing a percentage cap on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking on 'run of the mill' FLSA cases where the potential damages are low and the risk of protracted litigation high." *Id.* The Second Circuit further reasoned that limiting attorneys' fees to a proportion of the recovery would result in "no rational attorney" taking on FLSA cases unless they were doing so pro bono. *Id.* at 604. The Second Circuit went on to list numerous cases where the attorneys' fee awards far outweighed the recovery by the employee(s). *Id.* at 604–05.

The reasonableness of the agreed upon amount for attorneys' fees is supported by looking at the lodestar. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (discussing lodestar method's application to attorneys' fees awarded from a fee-shifting statute). The lodestar presumptively reflects reasonable attorneys' fees. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (stating that the lodestar figure has become the "guiding light" of fee-shifting jurisprudence). The lodestar is

calculated by multiplying the reasonable number of hours expended in the litigation by a reasonable hourly rate. *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 21 (S.D.N.Y. 2015).

Plaintiffs' Counsel seeks an hourly rate of $350 for the work performed. In the Southern District of New York, an hourly rate of $350 per hour is reasonable for FLSA work. *See Rodriguez v. 3551 Realty Company*, No. 17cv6553, 2017 WL 5054728, at *3 (S.D.N.Y. Nov. 2, 2017) (finding rates of $450 for partners and $350 for associates reasonable in FLSA action); *Vasquez v. Tasty Picks II Corp.*, No. 21-cv-8799 (ER), 2022 WL 17249365, at *3 (S.D.N.Y. Nov. 28, 2022) (finding $350 rate reasonable). Additionally, other courts have found Mr. Kaylor's $350 hourly rate reasonable for FLSA work. *See Rodriguez v. Valor Global, LLC*, Case No. 2:21-cv-01256-DWL (D. Ariz.) (Dkt. Nos. 34, 35) (approving $325 and $350 rates for Mr. Kaylor); *Roberts et al. v. AAY Security, LLC*, Case No. 2:19-cv-00366 (S.D. Tex.) (Dkt. Nos. 57, 58) (approving rates of $325 and $350 for Mr. Kaylor); *see also In re: Lowe's Companies, Inc. Fair Labor Standards Act (FLSA) and Wage and Hour Litig.*, MDL No. 2947 (W.D.N.C.) (approving $325 rate for Mr. Kaylor) (Dkt. Nos. 90-6, 94).

As evidenced by Plaintiffs' Counsel's billing records, counsel only performed the work necessary to reach a resolution in this matter, from investigating Plaintiff's claims, drafting the Complaint, to overseeing the approval of this settlement. At the time the original Letter Motion was submitted, Plaintiff's Counsel had incurred a total of $7,028.80 in attorneys' fees and costs. An award of $5,500.00 in attorneys' fees and costs in this matter is therefore reasonable, especially in light of the significant recovery counsel obtained for Plaintiff.

**Settlement Agreement Provisions**

The Settlement Agreement does not contain any provisions such as confidentiality, general release, or non-disparagement, that courts in this District have found objectionable. *See, e.g.*, *Fernandez v. N.Y. Health Care, Inc.*, 2020 U.S. Dist. LEXIS 69408 at *4-7 (S.D.N.Y. 2020).

**Conclusion**

For the reasons set forth above, the Parties jointly request that the Court approve the Settlement Agreement.

Thank you for your time and consideration of this request.

Respectfully submitted,

*/s/ James F. Horton*

James F. Horton

cc: All Counsel (via ECF)